NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0702-19T4

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

TAJMIR D. WYLES,

    Defendant-Respondent.

APPROVED FOR PUBLICATION

January 7, 2020

APPELLATE DIVISION

Argued telephonically December 3, 2019 –
Decided January 7, 2020

Before Judges Hoffman, Currier and Firko.

On appeal from an interlocutory order of the Superior
Court of New Jersey, Law Division, Camden County,
Indictment No. 16-06-1621.

Linda Anne Shashoua, Special Deputy Attorney
General/Acting Assistant Prosecutor, argued the cause
for appellant (Jill S. Mayer, Acting Camden County
Prosecutor, attorney; Linda Anne Shashoua, of counsel
and on the brief).

Jack J. Lipari argued the cause for respondent (Helmer
Conley & Kasselman, PA, attorneys; Jack J. Lipari, of
counsel and on the brief).

The opinion of the court was delivered by

CURRIER, J.A.D.

By leave granted, we consider whether the trial court erred in redacting the statement of a State's witness procured by defendant's investigator. Defendant intended to use the unredacted portions of the statement at trial. After reviewing the statement in camera, the trial court permitted the redaction of portions of the statement it and defendant deemed inculpatory. When the redacted statement was turned over to the State on the eve of trial, the State recognized a discrepancy in the redacted document, material to the witness's version of the events.

The State requested the court reconsider its redaction and order defendant to provide the entire unredacted statement. The motion was denied. Because we conclude the procedure employed here was contrary to the deep-rooted discovery practices established under <u>Rule</u> 3:13-3 and <u>State v. Williams</u>, 80 N.J. 472 (1979), we reverse.

In investigating a fatal shooting in February 2016, police learned that Steve[1] had witnessed the events. The day after the occurrence, Steve met with detectives from the police department and prosecutor's office and provided a recorded statement of what had transpired. He stated he knew the shooter from the area and that he was called "Fatboy." Steve identified defendant in a photo display as the shooter; he did not know defendant's real name.

---

[1] We use pseudonyms for the witness's privacy.

Defendant was subsequently charged in an indictment with first-degree murder, in violation of N.J.S.A. 2C:11-3(a)(1)(2); second-degree possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4(a); and second-degree unlawful possession of a weapon, in violation of N.J.S.A. 2C:39-5(b).

Two years after the shooting, an investigator retained by defense counsel contacted Steve, stating he wished to clarify some "things [he] saw in the police reports." The investigator recorded the conversation.

In December 2018, defendant filed a motion seeking in camera review and redaction of portions of the statement given by Steve to defendant's investigator. Defendant sought an order for the court to conduct an in camera review of the transcript "to determine what portions of the statement the defendant intends to use at trial, and whether any portions of the statement are work product. . . ."

During oral argument on the motion, defense counsel advised the court he did not think anything in the statement qualified as work product. He argued instead that he was not required to turn over anything inculpatory "that he did not intend to use. . . ." Counsel stated further he would not refer to any redacted portion of the statement during his cross-examination of the witness.

The State agreed that defendant was not required to turn over a statement of a State's witness that it did not intend to use. However, if defendant decided to use any portion of the witness statement, the entire statement had to be disclosed. The prosecutor observed that defendant had to "take the good with the bad."

In an oral decision, the court agreed to review the statement in the presence of defense counsel to determine which portions defendant intended to use at trial. The court would then redact any work product or inculpatory information. The redacted statement would be provided to the State. Defense counsel was prohibited from referring to any of the redacted information at trial. If counsel did so, the court would craft an "appropriate sanction."

The in camera review took place in March 2019. A copy of the sealed transcript from the hearing was provided to this court for our review. With some minor changes, the court agreed to all of defendant's proposed redactions on the grounds that the statements were inculpatory. The redacted statement was subsequently given to the State.

The day before trial in September 2019, defense counsel provided the State with the redacted audio disc recording of the phone conversation between the investigator and Steve. When the State compared the audio recording with the redacted written statement, it found the audio version contained a phrase

that had been removed from the written statement. The State believed the redacted phrase "materially contradicted and altered the context" of Steve's interview. In essence, the redaction made it sound as if the police had told Steve the name of the shooter, rather than Steve's statement that he knew the shooter by the name Fatboy.

Therefore, the State requested the court reconsider its redaction order, arguing the redacted statement altered the meaning of the witness's spoken words. The court denied reconsideration but granted a stay of the trial pending an emergent application to this court. We granted leave to appeal.

The State presents a single issue for our consideration:

> LEAVE TO APPEAL SHOULD BE GRANTED IN THE INTEREST OF JUSTICE BECAUSE THE STATE WILL SUFFER IRREPARABLE INJURY FROM THE DENIAL OF CRITICAL PROSECUTORIAL DISCOVERY WHICH ALLOWS DEFENDANT TO PRESENT A PARTIAL VIEW OF THE EYEWITNESS'S CREDIBILITY.

In reviewing a trial court's decision on a discovery matter, we apply an abuse of discretion standard. State v. Brown, 236 N.J. 497, 521 (2019) (citing Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)). Our Supreme Court has recognized that this court "need not defer, however, to a discovery order that is well 'wide of the mark,' . . . or 'based on a mistaken

understanding of the applicable law.'" State v. Hernandez, 225 N.J. 451, 461 (2016) (citations omitted).

The criminal discovery rules are "geared towards broader mutual discovery within constitutional limits." State v. Montague, 55 N.J. 387, 401 (1970). The purpose of discovery is to "prevent surprise, eliminate gamesmanship, and afford a party an opportunity to obtain evidence and research law in anticipation of evidence and testimony which an adversary will produce at trial." State v. DiTolvo, 273 N.J. Super. 111, 115 (Law Div. 1994) (citation omitted).

Under Rule 3:13-3(b)(2)(D), "[a] defendant shall provide the State with . . . written statements, if any, including any memoranda reporting or summarizing the oral statements, made by any witnesses whom the State may call as a witness at trial." This provision also requires "defendant . . . [to] provide the State with transcripts of all electronically recorded witness statements . . . no . . . later than [thirty] days before the trial date . . . ." Ibid. "The reciprocal discovery provision in [Rule] 3:13-3 . . . . entitle[s] [the State] to know in advance what evidence a defendant intends to use at trial so that it may have a fair opportunity to investigate the veracity of such proof." State v. Williams, 80 N.J. 472, 478 (1979).

The <u>Williams</u> court explained that the purpose behind <u>Rule</u> 3:13-3 was "to avoid having the State confronted at trial for the first time with written statements or summaries of oral statements of its own witnesses . . . used to attack the veracity of the witnesses' courtroom testimony." <u>Ibid.</u> Although a defendant is not required to produce materials which he does not intend to use at trial, or those which implicate his constitutional protections, including a party's work product, once a defendant has declared an intention to use the statement at trial, the State is permitted to inspect it. <u>Id.</u> at 478-79; <u>R.</u> 3:13-3(d). To address concerns that defendants may be discouraged from conducting an in-depth investigation for fear that inculpatory information might have to be turned over, mandatory disclosure is limited to statements defendant intends to use at trial. <u>Id.</u> at 478-79.

The trigger for disclosure, then, depends on whether a defendant intends to use the information or statement it has obtained from a State's witness. Here, months before any scheduled trial date, defense counsel moved before the court for an in camera review of the transcript of the statement its investigator took from Steve. The review was to "determine what portions of the statement the defendant intend[ed] to use at trial." During oral argument on the motion, defense counsel stated: "[W]e're here today . . . to ask the [c]ourt to redact certain portions I have no intention of using, and leave intact

what I would intend to use and turn that over so the State has fair notice of what it is."

It seems clear, considering its affirmative application to the court, that defendant intended to cross-examine Steve at trial with the statement it procured from him. Therefore, under Rule 3:13-3 and Williams, defendant was required to turn over the entire statement to the State.

Defendant disagrees. In his brief before this court, he states he wanted to use some portions of the statement, but "depending upon the outcome of [his] motion, [he] would have reserved the right not to disclose the entire statement provided [he] chose not to use any of it." He sought the redaction of any inculpatory or "unfavorable" information from the interview. In short, defendant asked the court to distill the information defendant deemed inculpatory, providing the State with a redacted statement. He wanted to see what redactions the court would agree to make before he made a final decision as to the statement's use.

Defendant cites to an unpublished case of this court to support his contentions. Under Rule 1:36-3, the unpublished opinion is not precedent or binding on us. Furthermore, the circumstances here differ from those presented in the unpublished case. In that case, we considered whether disclosure of a recorded interview taken of a State's witness was required if

defense counsel would not decide or tell the court whether she intended to use the statement at trial. We concluded that the proper recourse was for the trial court to craft an appropriate remedy under Rule 3:13-3(f).

Defendant here did not decline to advise the State if he intended to use his investigator's recorded interview of Steve. To the contrary, he asked the court to review the statement in camera and redact the portions of the statement he did not intend to use. Counsel desired to use the statement, but he wanted to know in advance of trial whether his requested redactions would be accepted by the court. If so, counsel would provide the redacted statement to the State.

It is a tenet of our jurisprudence that a defendant must advise the State if he or she intends to use a statement taken of a State witness. If so, defense counsel must turn over the statement to the prosecution. Although defendant here did not assert before the trial court that the work product doctrine precluded the production of the statement, we reiterate the court's rejection of that argument in Williams.[2] Defendant's use of a witness's statement on cross-examination for impeachment purposes effects a waiver of the work product privilege. Williams, 80 N.J. at 478-79.

---

[2] Defendant contends on appeal that the statement is work product as it was taken at the direction of his counsel. As stated, the statement is only protected as work product if defendant does not intend to use it at trial. R. 3:13-3(d).

What occurred here is exactly what <u>Rule</u> 3:13-3 and <u>Williams</u> intended to prevent. A defense investigator procured a recorded interview of a State witness. Outside the presence of the prosecutor, defense counsel argued to the trial court what portions of the statement he deemed inculpatory. The State was deprived of the opportunity to counter those arguments.

Only through an advertent error in the redaction of the recorded interview was the State alerted that a redaction permitted by the court significantly changed the context of the words spoken by Steve concerning his knowledge of the shooter's identity. As redacted, the investigator's statement was inconsistent with Steve's earlier statement given to detectives immediately after the incident – certain to be effective impeachment on cross-examination.

Had the editing mistake not revealed the material effect of the redaction, under the procedure employed here, the State would never have seen the complete unredacted interview. If the State still called Steve as a witness, hampered by the contradictory investigator's interview, his testimony would be categorized as inconsistent by the defense; his identification of the shooter questioned. The result of depriving the State and its witness the opportunity to view the entire statement is an injustice, in direct contravention of the truth-seeking process and avoidance of gamesmanship established under the discovery rules and supporting case law. <u>See</u> <u>Montague</u>, 55 N.J. at 397

(declaring in-depth reciprocal discovery helps assure the trial court will fulfill its purpose "to ascertain the truth") (quoting <u>Jones v. Superior Court of Nev. Cty.</u>, 372 P.2d 919, 920 (Cal. 1962)).

In sum, if a defendant wishes to use a statement or information taken from a State's witness, he or she must decide prior to trial, advise the State of his or her intention, and produce the statement. Redaction of the statement prior to disclosure is only appropriate for any asserted work product privileged information. If a defendant refuses to declare his or her intentions prior to trial regarding a statement, the court will consider the appropriate remedy under <u>Rule</u> 3:13-3(f).

Because defendant here signaled his intention to use the recorded interview well in advance of trial, he was compelled to disclose the statement under <u>Rule</u> 3:13-3(b)(2)(D) and <u>Williams</u>. It was a misapplication of the law to accord defendant an in camera hearing for argument on the redaction of the portions of the statement he did not want to use. A defendant is not entitled to a one-sided review, and then consider whether he or she likes the redactions prior to disclosing the statement. Under that procedure, the State is deprived of the opportunity to assess the veracity of the statement.

We reverse and remand to the trial court for entry of an order compelling defendant to produce the unredacted transcript of Steve's statement if

defendant intends to use the statement at trial. Defendant must advise the trial court of his intention regarding the statement within ten days of this remand. If defendant declines to use the statement, its production is not compelled.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0702-19T4